IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANTOINETTE K. GRIMMETT,
    Plaintiff,

vs.                                                               Case No. 07-1373-JTM

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION,
    Defendant.

MEMORANDUM AND ORDER

       Plaintiff filed the present action following a denial of her application for disability insurance benefits and supplemental security income (hereinafter "SSI"). For the following reasons, the court denies plaintiff's appeal.

       Plaintiff filed an application for disability insurance benefits and supplemental security income on December 16, 2004. (Tr. at 78-81 and 423-25). Plaintiff's applications were denied initially on April 8, 2005 and upon reconsideration on June 23, 2005. (Tr. at 43-47 and 36-40). Plaintiff filed a request for hearing on August 3, 2005. (Tr. at 34). Administrative Law Judge ("ALJ") Edmund C. Werre held a hearing on May 9, 2007 (Tr. at 430), issuing an unfavorable decision on May 24, 2007. (Tr. at 9 - 21). The Appeals Council denied the plaintiff's request for review in an order dated September 19, 2007. (Tr. at 5 - 7).

       Plaintiff appeals, stating the ALJ's decision is not supported by substantial evidence because he declined to credit the examining consultative psychologist's opinion that plaintiff would have

1

difficulty functioning at a job.

This court's review of the Commissioner's determination is limited. *Hamilton v. Sec'y of HHS*, 961 F.2d 1495, 1497 (10th Cir. 1992). This court is to determine whether the decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Reversal is appropriate if the agency fails to apply the correct legal standards or fails to demonstrate reliance on the correct legal standards. *Hamlin*, 365 F.3d at 1214.

Under 20 C.F.R. § 404.1512(a), plaintiff must demonstrate that he was unable to work because of a medically determinable impairment which lasted for a continuous period of at least 12 months. *See* 20 C.F.R. § 404 1512(a). *See also Mathews v. Eldridge*, 424 U.S. 319, 336 (1976); *Barnhart v. Walton*, 535 U.S. 212 (2002) (upholding the Commissioner's interpretation of the statutory definition which requires that the disability, not only the impairment, must have existed or be expected to exist for 12 months). The Commissioner must use a five-step sequential evaluation process ("SEP") in assessing disability claims. *See* 20 C.F.R. § 404.1520 (2005). In steps 1-3, the ALJ must determine whether plaintiff is engaged in substantial gainful activity, whether she has a medically determinable impairment that is "severe" under the Act, and whether plaintiff suffers from an impairment that meets or equals any impairment listed in 20 C.F.R. pt. 404, subpt.

P, App.1. *Id*. At step four of the process, the ALJ must address three phases in making a determination. *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996). The first phase requires an evaluation of the claimant's residual functional capacity. *Id.* at 1023. The second phase entails an examination of the demands of the claimant's past relevant work. *Id*. In the third phase, "the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id*. Specific findings are required at all phases. *Id*.

In this case, the ALJ determined that plaintiff suffered from the following severe impairments: (1) seizure disorder; (2) bipolar disorder; (3) psychotic disorder and (4) conversion disorder. (Tr. at 14). He then found the plaintiff's medically determinable mental impairments cause no more than mild to moderate limitations. (Tr. at 15). After hearing testimony from a vocational expert (Tr. at 470 - 479 ), the ALJ concluded plaintiff was not disabled as defined by the Social Security Act ("the Act"), and could perform work existing in significant numbers in the national economy. (Tr. at 14 - 21).

The ALJ found that plaintiff had no limitation in activities of daily living (Tr. at 15), having reviewed the following: (1)living alone; (2) self-care; (3) housekeeping; (4) money management; (5) daily socializing; (6) hobbies. (Tr. at 15, 18, 108-11 and 364). The ALJ may consider daily activities, along with other evidence, in determining whether a person is entitled to disability benefits. *See Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988); *Talbot v. Heckler*, 814 F.2d 1456, 1462 (10th Cir. 1987).

A plaintiff's residual functional capacity ("RFC") is what she can do despite her limitations. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Judge Werre found that

plaintiff retained the RFC to perform work with the following limitations: (1) no significant interaction with the general public; (2) no climbing of ladders, ropes or scaffolding and (3) limited exposure to temperatures, humidity, vibrations or hazards such as unprotected heights, being around dangerous moving machinery or operation of motorized vehicles. (Tr. at 15). The ALJ determined that the plaintiff could perform past relevant work as a hospital food service worker (Tr. at 20) as well as other work that existed in the economy, including: (1) grocery bagger/packer; (2) assembler and (3) addresser. (Tr. at 20). The vocational expert testimony supports the ALJ's decision (Tr. at 472 - 479) and substantial evidence supports the ALJ's RFC determination.

An impairment must be established by medical evidence, and must last for a continuous period of at least 12 months. 20 C.F.R. § § 404.1508, 404.1509, 416.908 and 416.909. The regulations define a "severe impairment" at step two of the evaluation process as an impairment that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. § § 1520(c) and 416.920(c). If a plaintiff's impairment can be controlled by medication, it is not severe. *See Wilson v. Chater*, 76 F.3d 238, 241 (8th Cir. 1996). The plaintiff did not produce medical evidence to support a severe mental impairment finding. The ALJ found: (1) plaintiff had mild restrictions in daily living activities; (2) moderate difficulties in social functioning; (3) moderate difficulties in maintaining concentration, persistence or pace; and (4) one or two episodes of decompensation. (Tr. at 15). The ALJ found plaintiff did not have an impairment or combination of impairments that met or equaled any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing of Impairments (Tr. at 15).

As noted above, "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) that results from anatomical, physiological, or psychological abnormalities and that could reasonably be expected to produce the pain or symptoms alleged. 20 C.F.R. § 416.929(b). Medical signs are "anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms)." 20 C.F.R. § 416.(b). Social Security Ruling ("SSR") 96-4p further states "[n]o symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." SSR 96-4p.

Some possible factors the ALJ considers are: (1) the levels of medication and their effectiveness; (2) the extensiveness of the medical or non-medical attempts to obtain relief; (3) the frequency of medical contacts; (4) the nature of daily activities; (5) credibility determinations; (6) motivation of and relationship between the plaintiff and other witnesses; and (7) the consistency or compatibility of nonmedical testimony with objective medial evidence. *See Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991); *Wiley v. Chater*, 967 F. Supp. 446, 450 (D. Kan. 1997). The credibility determination is left to the ALJ as the fact finder, and that determination is generally binding on the reviewing court. *See Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). The question is not whether a claimant experiences the subjective complaints alleged, but whether those symptoms are credible to the extent that they prevent a claimant from performing substantial gainful activity. *See Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992). The absence of an

objective medical basis to support the degree of severity of the allegations is an appropriate factor in evaluating credibility. *See Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987); 20 C.F.R. §§ 404.1529, 416.929.

The ALJ made the following observations in his opinion: (1) the inconsistencies between plaintiff's allegations and the objective medical evidence and assessments; (2) despite inconsistent treatment and compliance, the plaintiff retained her functional abilities; and (3) plaintiff's motivation for benefits appeared stronger than her motivation for consistent treatment. (Tr. at 16 - 19). The ALJ discussed and evaluated plaintiff's mental impairments using the psychiatric review technique as required by 20 C.F.R. §§ 404.1520a and 416.920a. (Tr. at 15).

The ALJ noted numerous bases for finding that the plaintiff's subjective allegations were not entirely credible. (Tr. At 16 - 20). The ALJ reviewed the medical evidence but noted that the EEGs and CT scans had normal or unremarkable results, which indicates a seizure disorder less severe than the disabling one plaintiff alleged. (Tr. at 16-19, 199, 206, 207, 217 and 255). Plaintiff did not see a seizure specialist nor did her medication dosage change after June 2006. In June 2006 the doctor considered plaintiff's disorder to be "well controlled' with medication. (Tr. at 333-36, 343 and 459-60).

Plaintiff regularly sought seizure and routine care treatment from Dr. Sharma. The ALJ noted that plaintiff did not consistently seek treatment for her mental health disorder and that cast doubt on her credibility regarding her allegations of extreme limitations from a mood disorder. (Tr. at 19, 367 and 379-84). Plaintiff did not seek mental health treatment or medication for nine months prior to the administrative hearing. (Tr. at 233-34, 338, 367 and 396). In fact, the plaintiff did not seek mental health treatment until the week before her hearing. Plaintiff's medical providers also

noted she was noncompliant with her medication. (Tr. at 233-34, 338, 367 and 396). Although an ALJ may not deny a claimant benefits solely because the claimant refused to follow prescribed treatment, the ALJ is not prohibited from "consider[ing] what attempts claimant made to relieve their [symptoms] - including whether they took medication - in an effort to evaluate the veracity of plaintiff's contention that his [symptom] was so severe to be disabling." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ noted that although the plaintiff alleged serious limiting symptoms attributable to her bipolar disorder, she did not regularly seek treatment and medication to alleviate those symptoms. (Tr. at 18-19). Factors such as "a claimant's persistent attempts to find relief for his [subjective complaints] and his willingness to try any treatment prescribed . . . [and] regular contact with a doctor" are to be considered during a credibility analysis. *Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987). The Social Security regulations also required consideration of such factors. *See, e.g.*, 20 C.F.R. §§ 404.1529, 416.929.

Plaintiff alleges the ALJ improperly used his credibility determination of plaintiff to discount Dr. Whisman's medical opinion. (Dkt. No. 12 - page 7). Dr. Whisman's records do not support the restrictive work limitations he placed on the plaintiff. (Tr. at 17, 19-20, 192-95). As part of the overall evaluation of a claimant's allegations, an ALJ must weigh the medical opinions of record and resolve any conflicts among the opinions of the various treating and examining physicians. *See* 20 C.F.R. §§ 404.1527, 416.927. The ALJ gave Dr. Whisman's assessment little weight because it was based on the claimant's subjective complaints rather than objective evidence. (Tr. at 17, 256-57). Dr. Whisman's objective findings via the mental status examination were inconsistent with his conclusion that plaintiff was unable to sustain work. In fact, when Dr. Whisman was asked to clarify the basis of his opinion, he stated his conclusion was based on plaintiff's self-reported inability to

7

work. (Tr. at 17, 256-57). Dr. Whisman's opinion on restrictions was properly discounted. *See White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2002) (discrepancy between treating physician's very restrictive functional assessment and her contemporaneous examination a legitimate factor for rejecting that opinion). The court finds that the ALJ made a proper credibility analysis based on controlling case law and social security regulations. The ALJ's credibility determination is supported by substantial evidence.

Plaintiff also alleges error in the ALJ's outline of plaintiff's global assessment of functioning (hereinafter "GAF") score as "58-60". (Dkt. No. 15 - pages 4-6). The ALJ relied upon the plaintiff's own mental health provider who had treated plaintiff for two years prior to the administrative hearing. (Tr. at 18 and 367). The record does reflect that plaintiff had GAF scores in the 30s and 40s, however those were in April and May of 2005. Plaintiff's mental health provider noted a GAF of 58-60 over the treatment period from April 12, 2005 to April 24, 2007. The ALJ also noted that when plaintiff returned to treatment in 2007 after many months without treatment and medication, her GAP was 50 and expected to improve once treatment resumed. (Tr. at 18). The plaintiff acknowledge that the GAF is used by practitioners in making treatment decisions and neither Social Security regulations nor case law require an ALJ to determine the extent of an individual's mental impairment solely on a GAF. (Dkt. No. 15 - page 13). The commissioner has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs" and has indicated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listings.**"** *See* 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (August 21, 2000)**;** *See also Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002) (GAF score may assist ALJ in formulating claimaint's RFC, but 'is not essential to the RFC's accuracy"). The ALJ's

decision reflects a consideration of the entire record and not just a reliance on isolated GAF scores.

The ALJ gave proper consideration to all medical opinions and other evidence in the record. The ALJ's finding that the plaintiff did not suffer from a severe mental impairment has ample support in the record.

IT IS ACCORDINGLY ORDERED this 12th day of March 2009, that plaintiff's appeal is denied.

                                                 s/ J. Thomas Marten  
                                                 J. THOMAS MARTEN, JUDGE